# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| STEPHEN L. HARZ | § § | |
| v. | § § | Civil Action No. 4:16-CV-00258 |
| DENTON COUNTY, TEXAS, DAVID E. LINNEL, BRYCE A. HICKS, SR., CHARLES H. CRAFT, JESSE D. WYMAN, JOHN DOE | § § § § § § | Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff's Opposed Motion to Extend Deadline to Respond to Defendant's Motion for Summary Judgment (Dkt. #26) and Defendants' Motion for Summary Judgment (Dkt. #25). After reviewing the relevant pleadings and motion, the Court finds Plaintiff's motion should be denied and Defendants' motion should be granted.

## BACKGROUND

On April 16, 2014, Denton County Sheriff's Deputy David Linnell ("Linnell")[1] responded to a 911 call in Providence Village, Texas. The complainant reported a harassing phone call by an unknown male caller who threatened to kill the homeowners if they did not give him money. The caller knew the homeowners' address and their daughter's name, address, and her ex-husband's name. Linnell investigated the phone number but could only determine that it was a California number. Linnell continued the investigation by canvassing the neighborhood and checking license plates on suspicious vehicles. After leaving the complainant's house, Linnell noticed a white Dodge truck driven by Plaintiff Stephen Harz outside of the complainant's house. Linnell recognized Plaintiff, knew that he lived nearby, and knew that

---

[1] The Court will use the spelling for each defendant's names that is provided in their affidavits attached to Defendants' Motion for Summary Judgment (Dkt. #25, Exhibits 1–5).

Plaintiff was capable of knowing the information used for threats. Plaintiff followed Linnell around the block several times before Linnell reported the suspicious activity to other officers.

Deputy Brice Hicks ("Hicks") responded and stopped Plaintiff shortly thereafter. Hicks commanded Plaintiff multiple times to show his hands. After what Hicks claims were furtive movements by Plaintiff, Hicks drew his weapon and ordered Plaintiff to comply. Plaintiff urges both his hands were visible with his right hand on top of the steering wheel and his left holding a cell phone to his ear. Plaintiff requested a supervisor, rolled up his window, and refused to communicate further with Hicks.

Corporal Charles Craft ("Craft") arrived within a minute, approached from the passenger's side of the truck, and identified himself to Plaintiff as a supervisor. Craft demanded Plaintiff show him his hands. After Plaintiff failed to comply with several requests, Hicks opened the driver's side door and ordered Plaintiff out of the truck. Plaintiff did not comply. Moments later, Craft ordered Hicks to get Plaintiff out of the truck. Hicks reached across Plaintiff's body then dragged him from the vehicle.

Once Plaintiff was out of the vehicle, he continued to resist orders. Three officers lifted Plaintiff to his feet and coerced his hands into handcuffs. Hicks then took Plaintiff away from the truck and patted him down in front of Hicks's squad car. Hicks then placed Plaintiff in the back of the squad car.

Linnell recognized Plaintiff on April 16 because of a previous encounter. On March 31, 2014, Linnell issued Plaintiff a ticket for an oversized trailer illegally parked in a residential neighborhood. The next day, Plaintiff filed a complaint with the Town of Providence Village (the "Town") and a grievance with the Denton County Sheriff's Office ("County" or "Sheriff's Office") alleging that Linnell was harassing him. Plaintiff was scheduled to appear in court for

his ticket on April 16, the same day as this incident. At the time of the incident, Linnell knew about the complaint with the Town, but did not know of the grievance with the County. Deputy Timothy Goodwin ("Goodwin") investigated the grievance and asserts that the grievance was closed without Linnell ever being informed.

On January 26, 2017, Defendants filed their motion for summary judgment, which included videos of the incident (Dkt. #25). On February 3, 2017, Plaintiff filed an opposed motion for extension of time to file response (Dkt. #26). On February 9, 2017, Plaintiff filed a response to the motion for summary judgment (Dkt. #27). On February 13, 2017, Defendants filed a response to the motion to extend time (Dkt. #28). On February 15, 2017, Defendants filed a reply to the motion for summary judgment (Dkt. #29).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but must "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

### Evidentiary Objections

Plaintiff objects to paragraphs 5–7 of Exhibits 1–5 to Defendants' Motion for Summary Judgment. Plaintiff argues that the respective affiants do not have personal knowledge of the events described because each specifically states that he reviewed the event report and makes reference to specific times in the recordings (Dkt. #27 at p. 2–3). Plaintiff's objection is overruled.

A party may submit affidavits in support of a motion for summary judgment so long as they are based on personal knowledge. Fed. R. Civ. P. 56(c)(4). Here, the affiants only reference the event reports and videos as a means of refreshing their memories. Each affiant, except for Goodwin, is clearly shown in the videos and only testifies to his involvement. Contrary to Plaintiff's assertion, their recitation of information is not verbatim across all five affidavits. Rather, each testifies to his own involvement while making reference to the time that it happened, which the video serves as an aid. This is permissible. Plaintiff's objection is overruled.

Plaintiff next objects to Defendants' Motion for Summary Judgment as a whole (Dkt. #27 at p. 3). Plaintiff claims that the case has been bifurcated at the present time and the sole issue before the Court is qualified immunity as to the individual officers. Plaintiff does not cite an order requiring such bifurcation. In a separate motion, Plaintiff requests additional time to respond to Defendants' motion (Dkt. #26). In the motion, Plaintiff also claims that discovery has been limited to matters directly affecting qualified immunity.

Plaintiff's motion is really a motion for continuance under Rule 56(d). Rule 56(d) allows the nonmovant on a summary judgment motion to ask the court for additional time to obtain affidavits or declarations or to take discovery before the Court rules on summary judgment. Fed.

R. Civ. P. 56(d). However, Rule 56 does not require any discovery to take place before summary judgment can be granted. *Id.*; *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005). Thus, the rule permits more time to respond to summary judgment only when the party cannot present facts essential to justify its opposition to the motion for summary judgment. *Id.* The trial court has wide latitude in granting extra time. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 308 (5th Cir. 2004). To support a request for continuance, Plaintiff must show: "(1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006). Further, a party must exercise due diligence in discovery. *Baker*, 430 F.3d 750, 756 (5th Cir. 2005) (citing *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992)).

Plaintiff demonstrates several unfortunate events that caused his inability to participate in discovery. However, Plaintiff does not demonstrate how he has attempted discovery or how any anticipated discovery will create a genuine issue of material fact. Plaintiff's own participation is not necessary for his attorney to conduct basic discovery. Defendants represent that Plaintiff has not complied with his Rule 26 disclosure requirements, has not conducted any written discovery, and has not designated any expert witnesses—the deadline for which passed on October 17, 2016 (Dkt. #17). Plaintiff's failure to designate any expert witnesses is especially problematic for his burden to overcome Defendants' entitlement to qualified immunity and to prove his back injuries as alleged. Further, while Plaintiff may have been limited in his ability to depose witnesses and advance his case, he has not been so limited in his filing of a response. Part of Plaintiff's allegations from the very beginning has been that he filed a number of complaints with the Town and County regarding Linnell. Plaintiff has also alleged from the beginning that he suffered back

pain and saw a doctor for treatment shortly after the event. It has now been three years since Plaintiff filed his grievances with the Town and County and since he allegedly visited the doctor. Nevertheless, Plaintiff has not provided records to support either of those allegations as part of his response to summary judgment. Besides vague assertions, Plaintiff has not shown how any further discovery will create a genuine issue of material fact or what form that discovery would take. Further, he has not been diligent in discovery.

Contrary to Plaintiff's claim, Defendants would be prejudiced by an extension of time to respond. On June 30, 2016, Defendants produced to Plaintiff a flash drive of voluminous documents, including the videos of Plaintiff's encounter with police (Dkt. #13). Defendants expended a substantial amount of time complying with discovery obligations and filing for summary judgment. Although the Court abated pretrial deadlines on April 20, 2017, Defendants would still be prejudiced by being required to participate in additional discovery and refile summary judgment because of Plaintiff's inability to prosecute for nearly year. Therefore, Plaintiff's objection to summary judgment is overruled and motion for extension of time to respond is denied.

Further, as discussed below, the Court finds that the evidence presented by Defendants shows a clear entitlement to qualified immunity, thus making discovery as to policies or practices of the County moot because Plaintiff was not subjected to any constitutional violation.

**Claims Against the Individuals**

Plaintiff alleges three causes of action under 42 U.S.C. § 1983 against Linnell, Hicks, Craft, Jesse Wyman ("Wyman"), and John Doe ("Doe") (collectively, "Individual Defendants").[2]

---

[2] Plaintiff asserts a claim against Doe in his Complaint. Plaintiff makes only a vague identification of Doe in his First Amended Complaint (Dkt. #8 at ¶ 9). Defendants state that they are without sufficient information or knowledge to admit or deny any allegations concerning Doe because of the vague identification (Dkt. #22 at ¶ 9).

7

The Individual Defendants each assert qualified immunity to each claim. The Court will address each in turn.

In order to establish § 1983 liability, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Public officials are immune from suit under unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). Thus, qualified immunity has two prongs: (1) a statutory of constitutional right was violated on the facts alleged, and (2) the right was clearly established. *Griggs v. Brewer*, 841 F.3d 308, 312 (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). A court may exercise its sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances of the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 135 S. Ct. 305, 308 (2015). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Put simply, qualified immunity protects "all but

---

Plaintiff does not mention Doe in his response to summary judgment. Because the Court finds that the Individual Defendants are entitled to qualified immunity, Doe's identity is immaterial.

the plainly incompetent or those who knowingly violate the law." *Mullenix*, 136 S. Ct. at 308 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

**Excessive Force Against Hicks, Craft, and Doe**

Plaintiff argues that Defendants' use of force was excessive because Plaintiff was subdued in his behavior and because there was no reasonable suspicion under the circumstances that Plaintiff had committed any illegal act or was engaged in criminal conduct. Plaintiff also claims that Hicks used excessive force when he dragged Plaintiff out of the truck without first unbuckling the seatbelt, therefore causing injuries to Plaintiff's back. The Court disagrees and finds that Defendants' actions were neither clearly excessive nor clearly unreasonable. The Individual Defendants are entitled to qualified immunity.

To succeed on an excessive force claim arising under the Fourth Amendment, a plaintiff must establish: "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)). To show a constitutional violation, the reasonableness of the force used is a question of law for the courts. *Pratt v. Harris Cty.*, 822 F.3d 174, 181 (5th Cir. 2016).

An officer's use of force only violates the plaintiff's constitutional rights if it is clearly unreasonable. *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 204–06 (2001)). An officer may still be entitled to qualified immunity, however, if the contours of the constitutional right are sufficiently unclear that the officer can be said to not have had "fair warning" of a violation. *Id.* at 501–502.

Determining whether the force used in a particular seizure is "reasonable" requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth

Amendment interests" against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). The proper application requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* The reasonableness inquiry is objective; therefore, it does not take into account the underlying intent or motivation of the officer. *Id.* at 397 (citations omitted). The Supreme Court's has articulated a number of factors when evaluating an excessive force claim. *Hudson v. McMillian,* 503 U.S. 1, 7 (1992). These factors include: (1) the extent of injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Officers may consider a suspect's refusal to comply with instructions in assessing whether physical force is needed to obtain compliance. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). When dealing with an uncooperative suspect, police act within the scope of objective reasonableness when they react with "measured and ascending responses." *Orr v. Copeland*, 844 F.3d 484, 493 (5th Cir. 2014) (citation omitted).

At the time of the altercation, Linnell was investigating a threatening phone call involving danger to life. Plaintiff was parked outside of the complainant's house, could know the information known by the caller, and followed Linnell around the block several times. When

Hicks stopped Plaintiff, he initially approached Plaintiff's truck with a pointed finger and yelling. The videos belie Plaintiff's assertion that he kept one hand on the top of the steering wheel. As Hicks approached Plaintiff's vehicle from the front, Plaintiff's hand was visible on top of the steering wheel. Once Plaintiff parked, his hand disappeared and it does not reappear on top of the steering wheel and cannot be seen again. After several commands, Hicks continued to yell and drew his gun, pointing it downward. The same sequence occurred when Craft appeared. Craft used words first, then escalated to his gun drawn. Hicks opened Plaintiff's door and again gave Plaintiff the opportunity to comply by stepping out of the car. Coinciding with Plaintiff's refusal to step out of the car, Craft saw a pistol magazine in the front seat of Plaintiff's truck. It was only then that Hicks forcibly removed Plaintiff and three officers worked to place him in handcuffs. Based on the clear evidence in the video, the officers on the scene did not use unconstitutionally excessive force in addressing Plaintiff.

Further, Plaintiff's injuries do not indicate that the force used was inherently excessive or unreasonable. *Whitley*, 475 U.S. at 321; *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (holding that a sore, bruised ear lasting for three days was a *de minimus* injury not sufficient to support a claim). Plaintiff alleges only a general injury from the handcuffs being "too tight," and a lower back injury. Plaintiff does not substantiate either claim with medical records or physical manifestation. Further, a claim for injury sustained by handcuffing alone, without more, is not constitutionally excessive. *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). For this additional reason, Plaintiff's claim should fail.

Plaintiff's reference to *Bush v. Strain* is inapposite. 513 F.3d at 501–02. In *Bush*, the plaintiff was already handcuffed and had given up the fight against officers. *Id.* at 496. The officer then slammed the plaintiff's face into the rear windshield of a nearby vehicle, injuring her

jaw and breaking two of her teeth. *Id.* The Fifth Circuit held that, based on the plaintiff's account of the events, the officer's actions after the arrest were clearly unreasonable. *Id.* at 502. Here, the clear video evidence shows that once Plaintiff had given up the fight against officers, Hicks simply patted down Plaintiff and placed him in the back of the squad car. Therefore, the force used after arrest was not clearly unreasonable and therefore did not violate Plaintiff's Fourth Amendment rights.

**Unlawful Seizure Against Wyman**

Plaintiff complains that Wyman had no legal cause to seize and then destroy the contents of data on Plaintiff's SIM card.[3] Plaintiff claims that "[a]s a result of the loss of data, Mr. Harz's ability to evince his lawful actions and the unlawful ones of Defendant Linnell were materially compromised" (Dkt. #8 at ¶ 37). Plaintiff argues in his response that he was coerced into handing over the memory card because Wyman was a uniformed officer and Plaintiff had already been threatened with a weapon and manhandled for not being responsive enough. The Court finds that Plaintiff gave valid consent to Wyman to take the memory card. Therefore, Plaintiff fails to state a constitutional violation.

A search or seizure of a person must be supported by probable cause particularized with respect to that person. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). However, "a search conducted pursuant to valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Voluntariness of a search is a fact question based on a totality of the

---

[3] All parties refer to the memory card in Plaintiff's GoPro camera as a "SIM" card. A SIM card is a subscriber identification module that stores data unique to the user, as an identification number, passwords, phone numbers, and messages. Dictionary.com, *SIM card*, http://www.dictionary.com/browse/sim-card (last visited June 8, 2017). SIM cards do not contain enough memory to store videos. Rather, an "SD" card, more commonly known as a memory card or flash drive, often contains enough storage space to store several minutes or hours of video. An SD card is a "Secure Digital Memory Card." *Encyclopedia, Definition of: SD Card*, PC Mag., http://www.pcmag.com/encyclopedia/term/50962/sd-card (last visited June 8, 2017). A GoPro camera holds a microSD card to store its videos, not a SIM card. *Cameras, Specifications-Storage (Memory)*, GoPro, https://shop.gopro.com/cameras (last visited June 8, 2017). Hereinafter, the Court will refer to the "SIM" card as a memory card.

circumstances. *United States v. Guevara-Miranda*, 640 F. App'x 319, 320 (5th Cir. 2016) (citing *United States v. Santiago*, 410 F.3d 193, 198–99 (5th Cir. 2005)). The court considers six factors:

> (1) the voluntariness of [Plaintiff's] custodial status; (2) the presence of coercive police procedures; (3) the extent and level of [Plaintiff's] cooperation with the police; (4) [Plaintiff's] awareness of his right to refuse to consent; (5) [Plaintiff's] education and intelligence; and (6) [Plaintiff's] belief that no incriminating evidence will be found.

*Id.* at 199 (internal quotation marks and citation omitted). Absent coercion, police are free to seek interviews from suspects or witnesses, even without the legal right to enter or to secure answers. *Schneckloth*, 412 U.S. at 231. Further, an officer wearing his uniform and weapon does not necessarily establish coercion. A consenting person may not consent to such inquiries and then later avoid prosecution on the simple claim that he acted only in response to an implied assertion of unlawful authority. *Id.* at 230–31.

Here, Plaintiff gives consent to Hicks to search his memory card. (Hicks Video at 27:00–34:10). Only two factors weigh slightly toward coercion. First, Plaintiff was involuntarily detained in handcuffs and the back of a police car when confronted. Second, Hicks told Plaintiff at least twice that the police will take the camera to search it and then return it later. These two factors alone are not enough to show coercion. *United States v. Shabazz*, 993 F.2d 431, 438–39 (5th Cir. 1993).

The totality of the circumstances dispels Plaintiff's claim of coercion. Moments before requesting consent, Hicks loosened Plaintiff's handcuffs (Hicks Video at 31:16). A few minutes later, and contemporaneous with the request to search, Hicks told Plaintiff that he would remove the handcuffs. *See United States v. Kelley*, 981 F.2d 1464, 1471 (5th Cir. 1993) (holding that detention in the back of a police car does not preclude finding of voluntariness). Although Hicks did not expressly tell Plaintiff that he had the option to refuse a search, Plaintiff demonstrated his

13

knowledge of this by his previous encounters with police, rolling up his window, and telling Hicks that he was reluctant to allow them to do anything. *United States v. Galberth*, 846 F.2d 983, 988 (5th Cir. 1988) ("[T]he failure to advise an individual of the right to withhold consent is not determinative in and of itself.").

The environment was professional and courteous. Although Plaintiff claims that weapons influenced his consent, all three *Brown* factors suggest any violation was attenuated. *Brown v. Illinois*, 422 U.S. 590, 601, 603–04 (1975) (holding that the temporal proximity, presence of intervening circumstances, and purpose and flagrancy of the violation are relevant considerations); *Kelley*, 981 F.2d at 1472–73 ("[A]dvising a defendant of his right to refuse to permit a search was a sufficient intervening occurrence to remove the influence of a prior Fourth Amendment violation."). Finally, Plaintiff expressed confidence at the time and throughout the present case that he did nothing wrong and the video would exculpate him.

Even viewing the evidence in the light most favorable to Plaintiff, the clear evidence from the video shows no genuine issue of fact exists as to Plaintiff's consent. *Scott v. Harris*, 550 U.S. 380–81 (2007). Therefore, Plaintiff fails to establish a constitutional violation necessary to support his claim. Plaintiff's claim that Wyman unlawfully seized his memory card is therefore dismissed.

**Retaliation Against Linnell**

Plaintiff claims that Linnell retaliated against him by failing to inform dispatchers that he knew Plaintiff was the driver of the suspicious truck. Because Linnell failed to inform dispatch of Plaintiff's identity, Plaintiff claims that Linnell "set the stage for a possible violent confrontation as fellow officers raced to [Linnell's] protection" (Dkt. #8 at p. 9). Plaintiff claims

that Linnell was motivated to retaliate because he was aware that Plaintiff filed a grievance against Linnell before the events at issue.

To prevail on a claim of retaliation, a plaintiff must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against plaintiff for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). The plaintiff must allege more than his "personal belief that he is the victim of retaliation." *Johnson*, 110 F.3d at 310 (quoting *Woods v. Edwards*, 51 F.3d 557, 580 (5th Cir. 1995)). Mere conclusory allegations of retaliation are not sufficient; a plaintiff must present either direct evidence of retaliatory motivation or a "chronology of events from which retaliatory motivation may be plausibly inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (citation omitted). Plaintiff has failed to produce any evidence to support the second or fourth element of his claim. Therefore, Linnell is entitled to judgment as a matter of law.

Plaintiff has failed to adduce any evidence that Linnell acted with retaliatory intent. Plaintiff alleges a chronology of events. Plaintiff alleges that he has had a number of "unwarranted" encounters with Linnell. Specifically, on March 31, 2014, Linnell issued Plaintiff a citation for his trailer. Plaintiff filed a grievance with the Sheriff's Office on April 1, 2014. Plaintiff was scheduled to appear in court in the evening of April 16, 2014, for the citation issued on March 31. In the afternoon of April 16, 2014, Plaintiff observed Linnell traveling through residential streets at a high rate of speed. Plaintiff decided to follow Linnell to determine what the emergency was and to gather evidence for his grievance against Linnell. After a few minutes, Plaintiff decided to leave. At the same time, Linnell reported Plaintiff's truck to dispatch and

requested that another deputy pull him over. Linnell did not inform dispatch that he recognized Plaintiff.

Linnell has produced ample evidence to defeat what little evidence Plaintiff has produced. Most importantly, Linnell did not know of Plaintiff's grievance at the time he was investigating threatening phone call. Further, Linnell was in the middle of an ongoing criminal investigation where a citizen's life was threatened. Linnell observed Plaintiff's truck parked outside of the complainant's house, recognized Plaintiff, and knew that he could know the relevant information. Plaintiff then followed Linnell around the block several times. Linnell ultimately gave a neutral report to dispatch of Plaintiff as a suspect. Linnell did not escalate his suspicions or voice any disdain he had toward Plaintiff. Plaintiff's allegations of a chronology of events do not create a genuine issue of fact as to Linnell's intent. Therefore, Plaintiff fails to support a claim for element two as a matter of law.

Further, Plaintiff fails to produce evidence to support a claim for causation. Plaintiff alleges that, but for Linnell failing to inform the other deputies of his knowledge of Plaintiff, the deputies would not have drawn their guns. This is contradicted by the videos and other evidence provided by Defendants. First, Linnell did not have knowledge of the grievance; therefore, his motive could not have caused Plaintiff's injury. Second, the situation that Plaintiff inserted himself into, an ongoing criminal investigation with possibility of death, and Plaintiff's noncompliance are the only reasons for the deputies' reaction. Plaintiff has failed to raise a genuine issue as to two elements of his claim. Therefore, Plaintiff's claim for retaliation fails as a matter of law.

## *Monell* Against Denton County

Plaintiff argues that the Sheriff's Office directly encourages misconduct by its failure to train, supervise, and control its officers. Specifically, Plaintiff claims that it is a matter of policy and practice for the Sheriff's Office to fail to investigate and adequately discipline misconduct, which leads deputies to believe their actions will never be scrutinized.

A plaintiff must prove three elements to establish a municipal liability claim: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). The Fifth Circuit defines "official policy" as:

> (1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> (2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam). Plaintiff only alleges the second type of policy.

To prevail on a failure-to-train theory, a plaintiff must show: "(1) the training procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the plaintiff's injury." *Conner v. Travis Cty.*, 209 F.3d 794, 797 (5th Cir. 2000) (quoting *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996)). An adequate training program must "enable officers to respond properly to the usual and recurring situations with which they must deal. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Absent a showing of need for more

training, a plaintiff cannot sustain a failure to train or inadequate training claim under § 1983 if the municipality complies with state-mandated training standards for its officers. *Conner*, 209 F.3d at 798 (citing *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)).

Plaintiff has not provided any evidence to support his claim that the deputies were not properly trained or of prior incidents that might indicate a need for additional training. Defendants provided records of their state-mandated training. This is dispositive of Plaintiff's first ground for inadequate training and supervision.

Plaintiff has also not provided any evidence of a policy or practice that the Sheriff's Office fails to investigate or adequately discipline misconduct. No party disputes that Plaintiff has filed complaints with the Town and County regarding Linnell. However, Plaintiff has not produced those to the Court. Further, Plaintiff does not provide any evidence that the handling of his complaints was inadequate, let alone part of a series of inadequate investigations. Plaintiff is entitled to file grievances. He is not entitled to the result he wants. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Therefore, the fact that he filed grievances with the Sheriff's Office and Linnell has not been disciplined does not show any violation of Plaintiff's constitutional rights by the County. *Id.*

Defendants, on the other hand, have produced an affidavit from Goodwin, the officer who conducted the investigation into Plaintiff's grievance (Dkt. #25, Exhibit 5). Defendants also produced the Denton County Sheriff's Office Event Report regarding the April 16 incident and Plaintiff's grievance with the County (Dkt. #25, Exhibit 7). These documents outline the various steps taken and analyses done by Goodwin and other officers during the relevant time. The Court finds these documents to show an adequate investigation in this instance. Plaintiff has failed to

rebut this showing or otherwise show that the Sheriff's Office has a policy of conducting inadequate investigations. Therefore, Plaintiff's *Monell* claim should be dismissed.

Additionally, the Court has already found that the officers did not violate Plaintiff's statutory or constitutional rights. Therefore, Plaintiff cannot establish that any lack of training or existing policy "was the moving force behind the violation of a constitutional right." *Peterson*, 588 F.3d at 847. For this additional reason, Plaintiff's *Monell* claim should be dismissed.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Opposed Motion to Extend Deadline to Respond to Defendant's Motion for Summary Judgment (Dkt. #26) is hereby **DENIED**.

It is further **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #25) is hereby **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

**SIGNED this 29th day of June, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE